AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of California



FILED
APR 19 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of: ) | |
| ) | |
| One black and gray Coolpad cell phone, model ) | Case No. |
| #3632A, with FCC ID: R38YL3632A, and IMEI: ) | |
| 862429030758484. ) | 2:18-SW-0382 KJN |
| ) | |

## APPLICATION FOR A SEARCH WARRANT

I, Jason R. Thompson, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

located in the ____Eastern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and/or Ammunition |

The application is based on these facts:

**See Affidavit of FBI Task Force Officer Jason R. Thompson, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason R. Thompson, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 19, 2018

_____
*Judge's signature*

City and state: Sacramento, California       Hon. Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH ELECTRONIC DEVICES**

I, Jason R. Thompson, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property (i.e., ne electronic device further described in Attachment A) which is currently in law enforcement possession, and the extraction from that property of electronically stored information further described in Attachment B.

2. I am a Detective with the Vallejo Police Department. I have been a sworn peace officer in the State of California since 2007. I have worked with the Vallejo Police Department since 2012, and I served with the Emeryville Police Department for five years before that. In September 2017, I was cross-designated as a Task Force Officer with the Federal Bureau of Investigation, Sacramento Division, Fairfield Resident Agency. In this role, I am responsible for investigating violent crimes and gang-related activity in Solano County, and the City of Vallejo specifically, as a member of the Solano County Violent Crimes Task Force.

3. In addition to my classroom training, I have been involved in over 100 narcotics, firearms, and gang-related investigations. I have investigated various types of crimes, including shootings, stabbings, motor vehicle theft, burglary, possession of stolen property, forgery, embezzlement, credit card fraud, violent crimes against persons, arsons, gang-related crimes, and narcotics-violations. In my 10-year law enforcement career, I have participated in all aspects of criminal investigations, including physical and electronic surveillance, executing search warrants, use of GPS data and tracking devices, interviews, and arrests. In addition to my classroom training, this practical experience has formed the basis of my opinions set forth below.

4. I have received thousands of hours of formal training with the Vallejo and Emeryville Police Departments. This includes: 880 hours at the P.O.S.T. basic police academy (2007); 8-hour Asset Forfeiture course (2007); 24-hour Drug Abuse Recognition course (2008); 40-hour Interview and Interrogation course (2009); 8-hour Narcotics Street Development course (2009); 16-hour Indoor Commercial Cannabis Investigations course (2009); 80-hour Narcotic Investigators School (2012); 20-hour Informant Development and Maintenance course (2012); 8-hour Violent Gang Infiltration course (2012); 24-hour Drug Law Enforcement Training program (2012); 8-hour Search Warrants "A through Z" course (2014); 40-hour Gang Foundation Specialty course (2016); 24-hour Gang Awareness course (2016); and 40-hour Advanced Gang Investigator Course.

5. Beyond the on-the-job training and the professional development courses described above, I have a Bachelor's of Science in Criminal Justice Management from Union Institute &

University. I have a Master's Degree from Arizona State University in Public Safety Leadership and Administration.

6. I have assisted in the execution of more than fifty warrants to search particular places or premises for firearms and/or firearms-trafficking paraphernalia, indicia, and other evidence of violations of federal or state firearms statutes. As a result, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by prohibited persons in possession of firearms and firearms traffickers in their efforts to import, conceal, possess, alter, modify, and sell firearms. I have been actively involved as case agent in excess of ten investigations and have talked with confidential informants involved in the illegal possession and/or trafficking of firearms, and this has formed the basis of my opinions.

7. As a result of my training and experience as a Police Detective and Federal Task Force Officer, I am knowledgeable of federal laws relating to firearms, and know that it is unlawful under 18 U.S.C. § 922(g)(1) for a person to possess a firearm and/or ammunition, if that person has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

8. The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel, and my own personal knowledge.

9. Since this Affidavit is intended to show only that there is sufficient probable cause for the requested warrant, it does not detail all of my knowledge about this investigation, only that which I believe to be pertinent to the requested search of the Device described below.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

10. The property to be searched consists of one cellular telephone ("the Device"):

    A. One black and gray Coolpad cell phone, model #3632A, with FCC: R38YL3632A, and IMEI: 862429030758484.

11. The Device is currently in the custody of the FBI in Fairfield, California.

12. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically-stored data particularly described in Attachment B.

## PROBABLE CAUSE

13. This Affidavit seeks authorization to search one cellular phone that was processed into evidence by Officer Jason Bahou (# 662) of the Vallejo Police Department on December 21, 2017, in connection with Vallejo PD Case No. 17-16159. The Device was maintained in the Vallejo Police Department's custody until April 17, 2018, when it was released to me in my capacity as an FBI Task Force Officer.

14. On December 21, 2017, Vallejo Police Officers Ryan McLaughlin and Jason Bahou were on patrol. The officers were driving in a fully marked black-and-white police cruiser with an overhead light bar. Both men were wearing their full police uniforms. Officer McLaughlin was driving. Just after 10:40 p.m., as the officers were driving eastbound on York Street in Vallejo, they saw a dark blue Cadillac traveling northbound on Sonoma Boulevard at a high rate of speed. They decided to follow the car, and estimated that it was traveling in excess of 55 m.p.h. in a 35 m.p.h. zone, a violation of California Vehicle Code (CVC), Section 22350.

15. The officers caught up to the Cadillac near the intersection of Sonoma Boulevard and Florida Street. There was a red light for northbound and eastbound travel at the intersection. The Cadillac—which was traveling northbound on Sonoma Boulevard—did not come to a complete stop at the limit line, but instead rolled into the crosswalk, and continued to roll east on Florida Street through the red light, a violation of CVC, Section 21453(a).

16. The Cadillac continued east on Florida Street and stopped at the intersection of Florida Street and Napa Street. The car then made a northbound turn onto Napa Street without signaling 100 feet prior to making the turn, a violation of CVC, Section 22108. There was another vehicle at this intersection.

17. The two officers decided to stop the Cadillac for the traffic violations described above. At that point, Officer McLaughlin activated his patrol car's overhead lights. When he did, the Cadillac accelerated away and tried to evade the officers in the following ways:

    - Fled northbound on Napa Street, driving in excess of the speed limit, a violation of CVC, Section 22350;
    - Drove through the stop sign posted at Napa Street and Kentucky Street, a violation of CVC, Section 22450;
    - Drove through the stop sign posted at Napa Street and Ohio Street, a violation of CVC, Section 22450;
    - Drove through the stop sign posted at Napa Street and Louisiana Street at a high rate of speed, a violation of CVC, Section 22450; and
    - Drove through the stop sign posted at Napa Street and Alabama Street at a high rate of speed, a violation of CVC, Section 22450;

18. After the Cadillac ran through this last stop sign, it lost control on Napa Street and collided with the curb, a stationary parking sign and pole, and a fence to a local auto dealership. Although the pursuit was short in duration and only spanned one-third of a mile (approx.), the Cadillac had run through four stop signs in a residential area and traveled at speeds in excess of 75 m.p.h. The car had been driving so fast that Officers McLaughlin and Bahou were going to cancel the pursuit for public safety reasons, but the car lost control before they could do so.

3

19. The Cadillac came to rest on Napa Street, just south of Tennessee Street. As the patrol car pulled up to the Cadillac, the officers could see the driver and sole occupant moving inside. It appeared as if the driver (later identified as Sammy Davis Dewitt Morgan) was trying to open the driver's-side door.

20. Officers McLaughlin and Bahou got out of their patrol car and pointed their firearms at the driver, while waiting for backup to arrive. After other officers had arrived on scene, McLaughlin and Bahou directed the driver (Morgan) to open the driver's-side door and step out of the vehicle. Morgan said that he could not open the door. The officers directed Morgan to exit the car through the driver's-side window. Morgan complied.

21. Once Morgan had climbed out of the Cadillac, Officers McLaughlin and Bahou could see that he had an object in his waistband. The two officers approached Morgan and detained him in handcuffs. When they did, McLaughlin recovered a Glock 22 .40 caliber pistol from Morgan's waistband. The gun had a 22-round extended magazine in the magazine well, and was loaded with 19 rounds of "Federal .40 S&W" ammunition. A records check later showed that the gun was unregistered.

22. Officer Bahou found a small white pill bottle in the Cadillac's center console. A live .40 caliber round was inside the bottle. The round had the same head stamp (i.e., "Federal .40 S&W") as the ammunition in the magazine.

23. In addition, Officer McLaughlin found a Coolpad cell phone underneath the driver's seat. The police report notes that Morgan asked Officers McLaughlin and Bahou "several times" if they could "throw his cell phone away," which seemed odd to the officers. McLaughlin also found a camouflage ski mask in the back of the Cadillac.

24. The officers ran a background check on Morgan, which showed that he was on active Post-Release Community Supervision (PRCS); had two outstanding felony warrants (one no-bail, the other $200,000); had an outstanding misdemeanor warrant ($7,500); was a restrained party in a domestic violence restraining order; had prior felony convictions; and was driving on a suspended license.

25. Morgan was positively identified and placed under arrest. He was medically cleared at a local hospital and taken to the Solano County Jail without further incident.

26. Afterwards, McLaughlin and Bahou decided to conduct a PRCS search at Morgan's listed address, which they found through the Vallejo Police Department's records management system. The two officers, along with a third Vallejo PD Officer, drove to an address on Florida Street and spoke with the residents, who said that Morgan no longer lived at that address.

27. Officer Bahou ran the registration for the Cadillac, and it came back as registered to an address on Esa Drive in Vallejo. The officers ran this address through the Vallejo PD's

|     | |
| --- | --- |
|     | records management system, and it came back as associated to Morgan in connection with a domestic violence incident reported in 2017. |
| 28. | The three officers drove to the address on Esa Drive to see if Morgan lived there. They knocked on the front door and spoke with one of the residents, who said that Morgan lived in a rear apartment at the backside of the house. |
| 29. | The officers knocked on the door at this separate quarters and spoke to a woman ("C.M.") who confirmed that Morgan had lived in the apartment since June 2017. Officer McLaughlin asked the woman why Morgan had not updated his address, and she said that he was talking with his lawyer about it. |
| 30. | The officers conducted a PRCS search of the one-bedroom apartment. In the bedroom, in the right top dresser drawer, they found two boxes of "Federal" brand .40 caliber ammunition. One box contained 50 rounds; the second had 20 rounds. The ammunition in these two boxes had the same head stamps as the ammunition in the Glock pistol Morgan had in his waistband when he was arrested. |
| 31. | Next to these two boxes of ammunition (also in the right top dresser drawer), there was a plastic sandwich bag with several rounds of loose .40 and .45 caliber ammunition. There were also two rounds of .223 rifle ammunition in the bag. |
| 32. | In the center top dresser drawer, the officers found a .40 caliber 10-round Glock magazine. Elsewhere in this same drawer, the officers found a pink slip for the Cadillac and an auto-repair invoice with Morgan's name and address, and vehicle information for the Cadillac. |
| 33. | The officers found Morgan's Social Security card in a jewelry box on the nightstand near the bedroom closet. |
| 34. | Morgan's adult criminal record includes: **(i)** a February 2002 felony conviction for battery on emergency personnel, in violation of California Penal Code, Section 243(C)(1); **(ii)** an October 2003 felony conviction for possession of a controlled substance, in violation of California Health and Safety Code, Section 11350(A); **(iii)** an August 2009 felony conviction for inflicting corporal injury on a spouse/cohabitant, in violation of California Penal Code, Section 273.5(A); **(iv)** an August 2009 felony conviction for assault with a deadly weapon (not a firearm), gross bodily injury likely, in violation of California Penal Code, Section 245(A)(1); **(v)** a December 2013 felony conviction for receiving stolen property, in violation of California Penal Code, Section 496(A); and **(vi)** a December 2013 felony conviction for assault with a deadly weapon with force, gross bodily injury possible, in violation of California Penal Code, Section 245(A)(4). As a previously convicted felon, Morgan is not allowed to possess any firearms or ammunition. |
| 35. | Based on the events described above, Morgan's criminal history, and the fact that the Glock pistol was manufactured outside the State of California, I swore out a criminal complaint and arrest warrant for Morgan on January 3, 2018, for two separate violations of |

18 U.S.C. § 922(g)(1) – felon in possession of a firearm and/or ammunition. *See United States v. Sammy Davis Dewitt Morgan*, 2:18-mj-0002-CKD (E.D. Cal.). Morgan was indicted on these two counts on January 18, 2018. *See United States v. Sammy Davis Dewitt Morgan*, 2:18-cr-0019-JAM (E.D. Cal.).

36. Based my training and experience, and from what I have learned by consulting other law enforcement agents, I know that mobile telephones:

- preserve in their memory a history of incoming, outgoing, and missed calls;
- contain in their memory a telephone book, which allows the user to store numbers and other contact information;
- contain in their memory text messages sent, received, and drafted by the user;
- have a voicemail function that allows callers to leave messages when the user does not answer;
- contain other user-entered data files such as "to-do" lists, which can provide evidence of crime;
- contain photographic data files, which can be evidence of criminal activity when the user took pictures of evidence of crime.

37. Mobile telephone companies also store the data described in the above-paragraph on their own servers and associate the data with particular users' mobile telephone. In addition, all of these functions are can be found on a "smart" phone or similar handheld device, as well as evidence of email communications.

38. There is probable cause to believe that Morgan knowingly possessed the loaded Glock 22 .40 caliber pistol recovered from his person on December 21, 2017, as well as numerous rounds of ammunition found in his one-bedroom apartment in Vallejo on that date. In addition, I note that a camouflage ski mask was found in the back of the Cadillac that Morgan was driving when he fled from Officers McLaughlin and Bahou. Last, I note that Officers McLaughlin and Bahou found a Coolpad cell phone underneath the driver's seat in the Cadillac, and that Morgan asked the two officers "several times" if they would "throw [the] cell phone away." In my training and experience, Morgan would not have made this request absent some incriminating evidence being present on that Device, and I submit there is probable cause to believe that information and records relating to the above-offenses will be found stored in the Device.

39. The Device is currently in the FBI's custody in Fairfield, California, and it has been in the possession of law enforcement since the Device was processed into evidence on December 21, 2017. Based on my experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into law enforcement's possession.

/ / /

/ / /

## TECHNICAL TERMS

40. Based on my training and experience, I use the following technical terms to convey the following meanings:

   - Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   - Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

41. Based on my training, experience, and research, I know that the Device has the capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, internet access device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who they communicated with, and the content of those communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

42. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

43. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the

7

Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

- Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is cannot always be reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

44. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

45. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

## CONCLUSION

46. Based on the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A, to seek the items described in Attachment B.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Jason R. Thompson
Task Force Officer
Federal Bureau of Investigations

Sworn to and subscribed before me on April 19, 2018.

_____
Hon. Kendall J. Newman
United States Magistrate Judge

Approved as to form:

_____
Timothy H. Delgado
Assistant United States Attorney

## **ATTACHMENT A**

Description:

    A black and gray Coolpad cell phone, model #3632A, with FCC: R38YL3632A, and IMEI: 862429030758484.

Photos:

 

## ATTACHMENT B

1. All records on the Device described in Attachments A that relate to violations of 18 U.S.C. § 921(g)(1), and involve Sammy Davis Dewitt Morgan, including:

All names, words, telephone numbers, email addresses, time/date information, photos/videos, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

    i. Incoming call history;
    ii. Outgoing call history;
    iii. Missed call history;
    iv. Outgoing text messages;
    v. Incoming text messages;
    vi. Draft text messages;
    vii. Telephone book (a/k/a "contacts list");
    viii. Data screen or tile identifying the telephone number associated with the mobile telephone searched;
    ix. Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
    x. Voicemail;
    xi. User-entered messages (i.e., to-do lists); and
    xii. Any passwords used to access the electronic data described above.
    xiii. Any photos or videos stored on the Device.

    b. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); and

    c. any information recording schedule and/or travel.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

### # # #

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

In the Matter of the Search of: )
)
One black and gray Coolpad cell phone, model #3632A, )   Case No.
with FCC ID: R38YL3632A, and IMEI: )
862429030758484. )   2:18-SW-0382 KJN
)

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     EASTERN     District of     CALIFORNIA
*(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before     May 3, 2018     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  10:35 A.M.
April 19, 2018                          _____
                                         *Judge's signature*

City and state:   Sacramento, California              Hon. Kendall J. Newman, U.S. Magistrate Judge
                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____   _____
Signature of Judge                              Date

## ATTACHMENT A

Description:

A black and gray Coolpad cell phone, model #3632A, with FCC: R38YL3632A, and IMEI: 862429030758484.

Photos:




## ATTACHMENT B

1. All records on the Device described in Attachments A that relate to violations of 18 U.S.C. § 921(g)(1), and involve Sammy Davis Dewitt Morgan, including:

All names, words, telephone numbers, email addresses, time/date information, photos/videos, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

i. Incoming call history;
ii. Outgoing call history;
iii. Missed call history;
iv. Outgoing text messages;
v. Incoming text messages;
vi. Draft text messages;
vii. Telephone book (a/k/a "contacts list");
viii. Data screen or tile identifying the telephone number associated with the mobile telephone searched;
ix. Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
x. Voicemail;
xi. User-entered messages (i.e., to-do lists); and
xii. Any passwords used to access the electronic data described above.
xiii. Any photos or videos stored on the Device.

b. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); and

c. any information recording schedule and/or travel.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

### # # #